IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| LIONEL LEE PRINCE, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-20-528 |
| WARDEN RICHARD DOVEY, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Self-represented Plaintiff Lionel Lee Prince, an inmate presently incarcerated at Western Correctional Institution in Cumberland, Maryland, filed this 42 U.S.C. § 1983 action against Warden Richard Dovey, Correctional Officer Chad Zimmerman, Rebecca Barnhart, RN, and Corizon Health, Inc. ("Corizon").[1]  ECF No. 1.  In the Complaint, Prince alleges that while he was housed at the Maryland Correctional Training Center ("MCTC"), CO II Zimmerman forged his signature on a blood draw waiver, which Nurse Barnhart accepted.  *Id.* 2-3.  Prince also asserts that Warden Dovey failed to investigate the incident, and that the Warden and Corizon failed to properly train their staff.  *Id.*  Prince claims that as a result of having his blood draw canceled, he suffered mental anguish.  ECF No. 5 at 2.  He seeks $125,000 in damages.  ECF No. 1 at 4.

Defendants Barnhart and Corizon (collectively, the "Medical Defendants") filed a Motion to Dismiss or, Alternatively, for Summary Judgment, ECF No. 13, which is fully briefed, *see*

---

[1] In his original Complaint, Prince included as Defendants an unidentified "Managing Official" and "Designee of the Facility."  ECF No. 1.  In a subsequently filed "Motion to Amend," however, Prince clarified that the intended Defendants are CO II Zimmerman, Warden Dovey, and Nurse Barnhart.  ECF No. 5 at 1.

1

ECF Nos. 18, 19.  CO II Zimmerman also filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment.  ECF No. 20.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Prince that the failure to file a response in opposition to CO II Zimmerman's motion could result in dismissal of his Complaint.  ECF No. 21.  Prince did not respond; instead, he moved for appointment of counsel to help him litigate and conduct discovery.  ECF No. 27.

No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  Warden Dovey was not served with the Complaint and the claims against him shall be dismissed without prejudice.  For the reasons set forth below, the Medical Defendants' and CO II Zimmerman's motions, construed as motions for summary judgment, shall be granted, and Prince's Motion for Appointment of Counsel shall be denied.[2]

I.  **BACKGROUND**

Prince alleges that on July 27, 2019, he was given a sick call request indicating that he "signed off" on the cancellation for his blood draw, which had been scheduled for June 11, 2019.  Compl., ECF No. 1 at 2.[3]  Prince claims that Nurse Barnhart told him "the signature did look a lot like Zimmerman [sic] handwriting."  *Id.*  On November 4, 2019, Prince informed Warden Dovey that someone forged his signature.  *Id.* at 3.  After correctional staff failed to investigate the matter, Prince filed an Administrative Remedy Request ("ARP").  *Id.*

At the time of the events at issue, Corizon was the contracted medical provider at MCTC, and Nurse Barnhart served as the Assistant Director of Nursing.  *See* Decl. of Barnhart, ECF No.

---

[2] In addition, the Motion to Strike Entry of Appearance, ECF No. 29, filed by counsel for CO II Zimmerman, shall be granted.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

13-2 at ¶ 2.  Prince's medical record reflects that he requested laboratory testing on May 13, 2019, after being exposed to another inmate's blood during a fight.  Medical Record, ECF No. 13-3 at 3.  A blood test was promptly ordered, *id.* at 4; however, a Release of Responsibility ("ROR") dated June 11, 2019 indicates that Prince refused to have his blood drawn, *id.* at 45.  The ROR includes Prince's name, Division of Correction identification number, and a signature, as well as the names and signatures of two witnesses, one of whom was CO II Zimmerman.  *Id.*

According to the Medical Defendants, when a patient housed in the segregation unit at MCTC refuses care, a member of the medical staff generally confirms with the inmate that he refused care, witnesses the inmate's signature of the ROR, and co-signs the ROR.  ECF No. 13-2 at ¶ 7.  In this instance, the ROR does not include the signature of the phlebotomist who was responsible for drawing Prince's blood, nor does Nurse Barnhart know whether the phlebotomist confirmed the refusal of care with Prince.  *Id.*

On July 1, 2019, Prince filed an ARP, claiming that his sick calls had been unanswered, and his blood was not drawn per his request.  ARP, ECF No. 13-4 at 1.  Nurse Barnhart reviewed Prince's medical record and responded to his complaint, noting that he was seen by medical providers in February and April 2019, and that he refused laboratory testing on June 11, 2019.  *Id.* at 3.  Nurse Barnhart also scheduled Prince with Pain Care Clinic and asked a provider to re-order laboratory testing.  *Id.* at 4.  Noting that Prince's medical record was devoid of sick call requests, Nurse Barnhart advised him of the proper method to submit them.  *Id.* at 3.

In responding to Prince's ARP, Nurse Barnhart met with Prince in person and explained that his medical record contained a ROR that was signed by him and appeared to be co-signed by CO II Zimmerman.  ECF No. 13-2 at ¶ 7.  Nurse Barnhart avers that she did not tell Prince his signature had been forged; rather, she states that she had no personal knowledge regarding the

3

signature. *Id.* CO II Zimmerman claims that he signed the ROR only as a witness. Decl. of Zimmerman, ECF No. 20-3 at ¶ 3.

On July 24, 2019, Prince had laboratory tests drawn. ECF No. 13-3 at 41-43. The results indicated negative tests for syphilis, Hepatitis A, Hepatitis B, and Hepatitis C. *Id.* On August 7, 2019, a medical provider reviewed the laboratory test results with Prince. *Id.* at 10-11.

## II.   STANDARDS OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*,

655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

*Pro se* complaints must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). However, despite this liberal construction requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments." *Id.*

The motions filed by the Medical Defendants and CO II Zimmerman are styled as motions to dismiss or in the alternative, for summary judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited

5

from granting a motion for summary judgment before the commencement of discovery.  *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006).  The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts.  *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 322–23.

A material fact is one "that might affect the outcome of the suit under the governing law."  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248–49.  However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  The Court may rely on only facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Here, because the Court considers evidence submitted by the parties, the Medical Defendants' and CO II Zimmerman's Motions will be reviewed as motions for summary judgment.

### III.   DISCUSSION

Construed liberally, Prince asserts a violation of the Eighth Amendment for deliberate indifference to his medical needs based on CO II Zimmerman's alleged cancellation of his blood draw and the Medical Defendants' acceptance of that waiver. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an

7

excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001); *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (citation and internal quotation marks omitted).

Here, Prince requested a blood test because he was concerned about his exposure to another inmate's blood. Objectively, his "worry about getting something from being in contact with someone [sic] blood," ECF No. 5 at 2, is speculative and does not present a serious medical need.

8

Even if he proved otherwise, however, his claim nonetheless fails because he has not shown that Defendants were deliberately indifferent to his needs. Contrary to Prince's assertion that Nurse Barnhart informed him of CO II Zimmerman's forgery on the ROR, Nurse Barnhart clarifies that that she did not tell Prince his signature had been forged. Instead, she explains that she had no personal knowledge regarding the signature. Likewise, CO II Zimmerman contradicts Prince's assertion by stating that he signed the ROR only as a witness.

In any event, once Nurse Barnhart discovered that the blood test was not performed, she requested one immediately. Prince does not claim that any delay in performing the laboratory tests exposed him to a serious or significant injury; nor could he, as the results came back negative for syphilis, Hepatitis A, Hepatitis B, and Hepatitis C. *See Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent").

Prince's claims against Corizon are also without merit. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate

indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

       Prince has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Nurse Barnhart, Corizon's employee. As Prince failed to show that his Eighth Amendment rights were violated in connection with his medical care, he has necessarily failed to demonstrate that Corizon authorized or was indifferent to any such violation. Moreover, Prince's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse."). His medical record reflects that he was routinely seen by medical staff and was educated on the proper procedure for requesting sick calls. Therefore, Corizon is entitled to summary judgment on this ground as well.[4]

---

[4] To the extent that Prince also brings medical negligence claims, the Court declines to exercise supplemental jurisdiction over them. See 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). These claims are dismissed without prejudice. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966)). To sustain a medical malpractice claim in state court, Prince must adhere to the Maryland Health Care Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01, *et seq.*, which requires a plaintiff to file medical negligence claims with the Health Care Alternative Dispute Resolution Office prior to filing suit when the claim for damages exceeds the jurisdictional amount for the state district courts. *See id.* at § 3-2A-02; *see also Roberts v. Suburban Hosp. Assoc., Inc.*, 73 Md. App. 1, 3 (1987).

In sum, Prince has not shown that Defendants exhibited a callous disregard for his serious medical need. *See Estelle*, 429 U.S. at 105-06. Thus, CO II Zimmerman and the Medical Defendants are entitled to summary judgment. As the case is not proceeding, Prince's Motion for Appointment of Counsel shall be denied.

## IV. CONCLUSION

For the foregoing reasons, the Medical Defendants' and CO II Zimmerman's motions, construed as motions for summary judgment, shall be granted. Prince's claims against Warden Dovey, the "Managing Official," and "Designee of the Facility" shall be dismissed without prejudice. Prince's Motion for Appointment of Counsel shall be denied, and counsel for CO II Zimmerman's Motion to Strike Entry of Appearance shall be granted.

A separate Order follows.

Date: <u>February 17, 2022</u>　　　　　　　　　__/s/_____
　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge